**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYN GROSS,<br><br>      Plaintiff,<br><br>      v.<br><br>TRIS PHARMA, INC.,<br><br>      Defendant. | Civil Action No. 20-15432 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

  **THIS MATTER** comes before the Court on Defendant Tris Pharma, Inc's ("Defendant" or "Tris") Motion for Summary Judgment with respect to age and disability discrimination claims filed against it by a former employee, Plaintiff Marilyn Gross ("Plaintiff"). (ECF No.17.) Plaintiff opposed the motion. (ECF No. 19.) Tris replied. (ECF No. 25.) The Court has carefully considered the parties' submissions and decides the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Tris's Motion for Summary Judgment is **DENIED**.

**I.  BACKGROUND AND PROCEDURAL HISTORY**

  The material factual circumstances giving rise to this action, and revealed through discovery between the parties, are set forth in the submissions of Plaintiff and Tris pursuant to Local Civil Rule 56.1. (*See* Tris Statement of Material Facts ("Tris SOMF"), ECF No. 17-2; Pl.'s Statement of Material Facts ("Pl.'s SOMF"), ECF No. 19-2.).

1

### A. Plaintiff's Employment at Tris

Tris is a specialty pharmaceutical company, focused on the development of pharmaceutical science and technology-based products, that employs approximately 530 employees. (Tris SOMF ¶ 1.) In November 2015, Plaintiff accepted an offer of employment from Tris to work in the position of "Promotional Education Brand Manager." (*Id.* ¶¶ 4, 6.) Plaintiff was 63 years old at the inception of her employment at Tris. (*Id.* ¶ 5.) As the Promotional Education Brand Manager,[1] Plaintiff worked within the marketing department under the direct supervision of Thomas Curatolo ("Curatolo") and, later, Michelle Perlman ("Perlman"). (*Id.* ¶ 7.) Plaintiff's role entailed, among other things, managing the company's speaker bureau programs. (*Id.* ¶ 8.)

In March 2019, Plaintiff received a performance review as to her work in 2018, which indicated that Plaintiff met company expectations but could improve in certain areas. (*See* Declaration of Bradley L. Mitchell ("Mitchell Decl."), Ex. C, ECF No. 17-4.) Specifically, Plaintiff's March 2019 review stated that Plaintiff is "a hard worker that takes [her] job seriously," and that "[t]he sales team ha[d] come to rely on [her] to administer the speaker's bureau and local and national conference incentives." (*Id.* at 4.) The review also stated that Plaintiff's performance could be "significantly improved" by focusing on ways to optimize marketing initiatives, rather than "just execut[ing] an initiative because that is the way it was done in the past." (*Id.*) The review included suggestions for Plaintiff to "stop letting the past constrain [her]," and to work on her presentation skills. (*Id.*) Ultimately, Plaintiff received a 4 out of 7 rating on her 2018 performance review, indicating that she met expectations. (*Id.*)

At various times throughout Plaintiff's employment, she was the subject of age-related comments from company leadership. (Pl.'s SOMF ¶¶ 3–6.) In one instance, Ketan Mehta

---

[1] Plaintiff's position was also referred to as "Product Manager" and "Program Manager." (Pl.'s SOMF ¶ 2.) Plaintiff's position title later changed to "Senior Program Manager." (*Id.*)

2

("Mehta"), the Chief Executive Officer ("CEO") of Tris, referring to Plaintiff, stated, "what do you know, you're an old woman," during a meeting with senior company leadership and outside vendors. (*Id.* ¶ 5 (citing Mitchell Decl., Ex. D at 38:5–11).) In addition, Curatolo frequently told Plaintiff that she reminded him of his mother, to which Plaintiff objected. (*Id.* ¶¶ 6–7.)

As early as 2017, Plaintiff began experiencing physical pain and discomfort in her hip. (*Id.* ¶ 8.) By late 2018, Plaintiff's hip condition worsened, and she began using a walking cane. (*Id.* ¶ 9.) Mehta, Curatolo, and Perlman all testified to having observed Plaintiff using assistive devices to move about the office and were aware that Plaintiff was experiencing severe hip pain. (*Id.* ¶ 11.) In response, Mehta made comments about Plaintiff's use of assistive devices and difficulty walking, such as "Oh, why are you walking like that, what's wrong, why are you doing that." (*Id.* ¶ 12 (citing Mitchell Decl., Ex. D. at 98:24–99:16).) Perlman also commented on Plaintiff's use of a walking cane, stating "you're just like my mother's neighbors, everybody your age has hip problems." (*Id.* ¶ 13 (citing Mitchell Decl., Ex. D. at 102:5–13).)

At some point between April and July of 2019, Plaintiff, Mehta, Curatolo, and Perlman attended a national conference in Florida. (*Id.* ¶ 14.) During the conference, Plaintiff rented a mobility scooter because her hip condition rendered her unable to walk. (*Id.* ¶ 15.) When Mehta saw Plaintiff using the mobility scooter, he reacted by asking "who's paying for that[?]" (*Id.* ¶ 17 (citing Mitchell Decl., Ex D at 60:1–8).)

Around the same time, Plaintiff requested a new office chair that would be more supportive and comfortable for her hip. (*Id.* ¶ 18 (citing Mitchell Decl., Ex. D at 105:4–25).) Plaintiff also made a request to human resources that she be allowed to use the handicap parking spot at the office given her hip condition.[2] (*Id.* ¶ 19 (citing Mitchell Decl., Ex. D at 103:19–105:1).) Plaintiff

---

[2] Tris's human resources director testified that she did not recall receiving a formal request from Plaintiff regarding use of a handicap parking spot. (Tris SOMF ¶ 20 (citing Mitchell Decl., Ex. F at 35:12–36:2).)

3

did not receive a response from human resources or her supervisors regarding either request. (*Id.* ¶¶ 18–19.)

### B.   Plaintiff's Termination

After returning from the conference, on or about July 25, 2019, Plaintiff went to a doctor to assess her hip condition. (*Id.* ¶ 25.) X-rays revealed that Plaintiff had two large tumors in her lower abdomen, which were the cause of Plaintiff's pain and physical limitations. (*Id.*) Plaintiff returned to work that same day and informed her coworkers of her condition, including showing Curatolo and Perlman copies of her x-rays. (*Id.* ¶ 26.) Plaintiff informed Curatolo and Perlman that she would need time off from work in order to attend follow-up appointments. (*Id.* ¶ 28.) On July 31, 2019, Plaintiff advised Curatolo that she would need additional time off to see a specialist doctor to assess the nature of the tumors. (*Id.* ¶ 31.)

Then, on August 1, 2019, Curatolo informed Plaintiff that she had been terminated as part of a reorganization of Tris's marketing department. (Tris SOMF ¶ 21; Pl.'s SOMF ¶ 31.) Specifically, Tris eliminated Plaintiff's position and replaced it with two new "Senior Product Manager" roles. (Tris SOMF ¶ 23.) Curatolo explained to Plaintiff that she was not being placed into one of the Senior Product Manager roles, in part, because she purportedly lacked proficiency in social media. (Pl.'s SOMF ¶ 32.) Plaintiff's performance was not cited as a reason for her termination. (*Id.* ¶ 34.) Curatolo also offered Plaintiff a demotion to an administrative role at Tris for less than half the compensation she received at the time. (*Id.* ¶ 31.) Plaintiff declined the offer. (Tris SOMF ¶ 22.) Tris ultimately hired two new Senior Product Managers in the wake of Plaintiff's termination, both of whom were significantly younger than Plaintiff. (*Id.* ¶ 23.)

According to Tris, the decision to restructure its marketing department was made in or around April or May of 2019, and was based on factors including: a reduction of the marketing

4

budget; the desire to reallocate funds away from the speaker bureau programs; and the need to absorb Plaintiff's niche position into roles that were larger in scope and responsibility. (Tris SOMF ¶¶ 11–13.) Plaintiff points out that the job descriptions for the Senior Product Manager positions were virtually identical to her previous role. (Pl.'s SOMF ¶ 37.) Besides Plaintiff's formal role, no other positions were eliminated in the reorganization of Tris's marketing department. (*Id.* ¶ 38.)

      **C.**    **Procedural History**

On February 6, 2020, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*See* Compl. ¶ 5, ECF No. 1.) The EEOC subsequently issued Plaintiff a Notice of Right to Sue on August 10, 2020. (*Id.* ¶ 6.) On November 2, 2020, Plaintiff filed a four-count Complaint, asserting the following causes of action: (I) disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*; (II) disability discrimination and retaliation under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1, *et seq.*; (III) age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*; and (IV) age discrimination under the NJLAD. (*Id.* ¶¶ 33–61.)

Following discovery, Tris moved for summary judgment on all counts. (*See* Tris Moving Br., ECF No. 17-5.) Plaintiff opposed the motion. (*See* Pl.'s Opp'n Br., ECF No. 19-6.) Tris replied. (*See* Tris Reply Br., ECF No. 25.)

**II.**    **LEGAL STANDARD**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" when "a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" only if it has the ability to

"affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. The moving party bears the burden of showing that no genuine dispute exists such that summary judgment is warranted. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Once the movant adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine [dispute] for trial." *Id.* at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998). Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 249. There can be "no genuine [dispute] as to any material fact," however, if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23.

### III.  DISCUSSION

Tris moves for summary judgment on Plaintiff's age and disability discrimination claims, arguing that "the elimination of Plaintiff's position was the result of clearly identified business priorities, which were never discriminatory, retaliatory, nor pretextual." (Tris Moving Br. at 1.) Specifically, Tris asserts that "there is no evidence of discriminatory or retaliatory animus in this

case" because "the record plainly shows that the decision to eliminate Plaintiff's niche position was the result of a long-planned department restructuring, driven by a shift in priorities and reallocation of resources," and Plaintiff cannot show that her position would not have been eliminated but for her disability or age. (*Id.*) In opposition, Plaintiff argues that Tris's proffered reasons for her termination are pretextual as the record includes evidence of bias against Plaintiff among Tris leadership because of the disabling condition of her hip and her age, including various age-related comments by Tris leadership throughout the course of Plaintiff's employment and the temporal proximity of Plaintiff's termination to the worsening of her hip pain, her use of ambulatory assistive devices, and the revelation that two large tumors were causing her condition. (*See* Pl's Opp'n Br. at 5.)

As explained in further detail below, there are genuine issues of material fact as to Tris's intent in terminating Plaintiff. Because, based on the record evidence and the competing testimony of the parties, a reasonable juror could conclude that Tris's restructuring of its marketing department is merely a pretextual excuse for its termination of Plaintiff based on the impermissible factors of disability or age, summary judgment is unwarranted.

    **A.**    **Disability Discrimination (Counts I & II)**

Plaintiff's disability discrimination claims under the ADA and NJLAD are analyzed pursuant to the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Fowler v. AT & T, Inc.*, 19 F.4th 292, 298 (3d Cir. 2021). First, to establish a *prima facie* case of disability discrimination, a plaintiff must show that she "(1) has a 'disability,' (2) is a 'qualified individual,' and (3) has suffered an adverse employment action because of that disability." *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 414 (3d Cir. 2017) (quoting *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 611 (3d Cir. 2006). "If [the plaintiff] is able to make out

7

a *prima facie* case, the burden of production shifts to [the employer] to provide a legitimate, non-discriminatory reason for its actions." *Fowler*, 19 F.4th at 299 (citing *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999)). "If it does, [the plaintiff] may prevail at summary judgment only if she has evidence that [the employer's] response is merely a pretext, meaning evidence that could cause a jury 'either [to] (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Id.* (citations omitted).[3]

### 1. *Prima Facie* Case

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). "The goal at this stage is to 'eliminate [ ] the most common nondiscriminatory reasons' for the defendant's actions; by doing so, the prima facie case creates an inference that the defendant's actions were discriminatory." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 271 (3d Cir. 2010) (quoting *Burdine*, 450 U.S. at 254).

First, Plaintiff has established that her hip condition, including the presence of tumors, which were the underlying cause of the condition, qualifies as a disability. "Under the ADA, 'disability' means 'a physical or mental impairment that substantially limits one or more major life activities,' having 'a record of such an impairment,' or 'being regarded as having such an impairment.'" *Stewart v. Cty. of Salem*, 274 F. Supp. 3d 254, 259 (D.N.J. 2017) (quoting 42 U.S.C. § 12102(1)). "Major life activities" include walking and standing. *See* 42 U.S.C. § 12102(2)(A). And "[w]hat constitutes a disability [under the ADA] must be construed broadly." *Stewart*, 274 F. Supp. 3d at 260 (citing 29 C.F.R. § 1630.2(j)(1)(i) ("Substantially limits" "shall be construed

---

[3] As the Third Circuit has explained, with respect to claims under both the ADA and ADEA, "[b]ecause claims under these statutes align with claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, [courts] look to Title VII case law to help inform [the] analysis." *Fowler*, 19 F.4th at 298.

8

broadly in favor of expansive coverage" and "is not meant to be a demanding standard.")). The NJLAD is similarly construed broadly and provides an expansive definition of "disability." *See id.*; N.J.S.A. § 10:5–5(q). Here, the record demonstrates that Plaintiff suffered from hip pain and physical limitations in 2017, and, by late 2018, her ability to move around unassisted was significantly inhibited. (*See* Pl.'s SOMF ¶¶ 8–10.) Plaintiff began using a walking cane as a result of her condition and resorted to use of a mobility scooter at a work conference in 2019. (*See id.* ¶¶ 9, 15.) Subsequently, Plaintiff was diagnosed with two large tumors in her lower abdomen. (*See id.* ¶ 25.) Tris does not contest that Plaintiff's condition qualifies as a disability under the ADA and NJLAD. As such, the unrefuted evidence is sufficient to establish Plaintiff suffered from a disability.

Second, Plaintiff has demonstrated that she was qualified for the position from which she was terminated. To show she was qualified for her position, a plaintiff "must have 'the requisite skill, experience, education, and other job-related requirements of the position.'" *Fowler*, 19 F.4th at 303 (quoting *Turner*, 440 F.3d at 611). Under the ADA, a plaintiff must further show that "with or without reasonable accommodation, [she] can perform the essential functions of that position." *Id.* (internal quotations and citation omitted). Here, there is no dispute that Plaintiff was able to perform the essential functions of her job despite her disability. Plaintiff had been employed by Tris since November 2015, and, in March 2019, received a performance review indicating that her work met the company's expectations. (*See* Mitchell Decl., Ex. C.) Indeed, nothing in the record indicates that Plaintiff's disability affected her job performance or that she was otherwise unqualified, nor does Tris raise such an argument in its motion.[4]

---

[4] In its reply brief, Tris argues that Plaintiff was unqualified for the Senior Product Manager position, which replaced her former role. (*See* Tris Reply Br. at 2.) Because Tris raises this argument only in the context of Plaintiff's age discrimination counts, the Court addresses the contention in its analysis of those claims.

9

Finally, Plaintiff has set forth sufficient evidence to establish a causal link between her disability and the adverse employment action that she suffered.[5] Courts "consider 'a broad array of evidence' in determining whether a sufficient causal link exists to survive a motion for summary judgment," including temporal proximity, antagonistic comments, discriminatory animus, and inconsistencies in an employer's explanations for termination, among other things. *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3d Cir. 2000)). Here, the record demonstrates that Tris's leadership was aware of Plaintiff's disability prior to her termination, both through their own observation of Plaintiff and Plaintiff having reported her medical diagnosis, and that company leadership had made antagonistic, contemporaneous comments about Plaintiff's inability to walk without assistance. Prior to Plaintiff's termination, Mehta had made critical comments about Plaintiff's inability to walk without a cane. (*See* Pl.'s SOMF ¶ 12.) Mehta also made a negative comment about Plaintiff's use of a mobility scooter at the national conference. (*See id.* ¶ 17.) Similarly, Perlman, Plaintiff's direct supervisor at the time, made at least one dismissive comment regarding Plaintiff's hip condition prior to her termination. (*See id.* ¶ 13.) Further, Plaintiff was terminated less than one week after having informed Curatolo and Perlman that her hip condition was the result of two large tumors in her lower abdomen. (*See id.* ¶ 31.) Viewing such evidence in the light most favorable to Plaintiff, it is "sufficient to create an inference that a causative link exists between [her] disability and [her] termination." *Hollingsworth v. R. Home Prop. Mgmt., LLC*, 498 F. Supp. 3d 590, 603 (E.D. Pa. 2020); *see Sempier v. Johnson & Higgins*, 45 F.3d 724, 728 (3d Cir. 1995) ("The prima facie case merely 'raises an inference of discrimination only

---

[5] There is no dispute that Plaintiff suffered an adverse employment action. *See Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (noting that an adverse employment action is "an action by an employer that is serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment") (internal quotation marks and citation omitted).

because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'") (citation omitted).

        2.    Pretext

To satisfy its burden of production in response to Plaintiff's *prima facie* case, Tris must set forth "a legitimate, non-discriminatory reason for its actions." *Fowler*, 19 F.4th at 299. According to Tris, Plaintiff was terminated as part of a restructuring of its marketing department, through which Tris decided to eliminate Plaintiff's position and replace it with two new "Senior Product Management" positions, which were intended to be larger in scope and responsibility. (*See* Tris SOMF ¶¶ 11–13.) Tris further contends that the decision to reorganize the marketing department occurred prior to Plaintiff's tumor diagnosis on July 25, 2019, and, therefore, its decision to terminate her employment could not have been based on her disability. (*See* Tris Moving Br. at 13–16.)

Plaintiff argues that Tris's proffered reasoning for her termination is pretextual. "To discredit the employer's proffered reason . . . the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994). Instead, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence," and thus "infer that the employer did not act for [the asserted] non-discriminatory reasons." *Id.* (internal quotation marks and citations omitted).

Here, Plaintiff first asserts that Tris's reasoning fails to adequately explain Plaintiff's termination. (*See* Pl.'s Opp'n Br. at 9.) Even if Tris decided to restructure its marketing department by converting Plaintiff's position in two "Senior Product Manager" roles and that decision was

made prior to Plaintiff's tumor diagnosis, those facts do not sufficiently address when or why Plaintiff's termination decision occurred. Plaintiff further argues that there is sufficient evidence in record for a reasonable juror to conclude that Plaintiff's termination was never planned as part of the restructuring and rather took place in response to her disability. (*See id.* at 9–10.) Specifically, Plaintiff highlights that Curatolo testified that he considered assigning Plaintiff to a new role in the marketing department. (*See* Mitchell Decl., Ex. E at 46:21–23.) And Plaintiff testified that, after the national conference, Perlman told her that she would be informed of her roles and responsibilities once the department reorganization was complete. (*See* Mitchell Decl., Ex. D at 75:22–25.) Plaintiff casts further doubt on Tris's proffered reasoning by emphasizing that her termination occurred in close temporal proximity to her tumor diagnosis—less than one week—and that Mehta, Curatolo, and Perlman had all recently witnessed Plaintiff's use of a mobility scooter at the national conference, which prompted a negative comment from Mehta, the company's CEO. *See* (Pl.'s SOMF ¶¶ 12, 17, 31.) Similarly, as noted above, both Curatolo and Perlman had a history of making negative comments about either Plaintiff's age or disability. *See Johnson v. Del. Cty. Juvenile Detention Ctr.*, 545 F. App'x 135, 139 (3d Cir. 2013) (stating that *prima facie* case and pretext inquiries often overlap).[6] Further, and perhaps most critically, Plaintiff's formal title was the only position eliminated in the restructuring. (*See* Pl.'s SOMF ¶ 38.)

---

[6] In an effort to preclude consideration of comments made by company leadership other than Curatolo, Tris argues that Curatolo was the "singular decisionmaker" with respect to the restructuring and Plaintiff's termination. (*See* Tris Reply Br. at 13.) But "discriminatory comments made by one with input into the decision-making process are not properly viewed as mere stray remarks." *Hahn v. RealReal, Inc.*, No. 18-5030, 2021 WL 4260908, at *13 (D.N.J. Sept. 17, 2021) (citing *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 286 (3d Cir. 2001)); *see Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 132–33 (3d Cir. 1997) (explaining that even "stray remarks" may be "probative of informal managerial attitudes"). Here, the record includes evidence that both Mehta, as the company CEO, and Perlman, as Plaintiff's direct supervisor, were involved in the details of the restructuring. (*See* Michell Decl., Ex. D at 75:22–25, Ex. E at 42:9–17, Ex. G at 42:14–43:18.) As such, their comments are properly considered with respect to Plaintiff's pretext arguments.

Viewed in its totality, the Court finds such evidence "establish[es] a reasonable inference that [Tris's] proffered explanation is unworthy of credence." *Sempier*, 45 F.3d at 728 (citing *Fuentes*, 32 F.3d at 764). Indeed, based on this evidence, a reasonable factfinder could conclude that Tris's restructuring decision does not necessarily account for Plaintiff's termination, and, therefore, casts doubt on the legitimacy of Tris's explanation, particularly given the timing of Plaintiff's termination and contemporaneous comments made by company leadership. Notably, "[a] plaintiff is not required to produce evidence which necessarily leads to the conclusion 'that the employer did not act for nondiscriminatory reasons.'" *Id.* (quoting *Sorba v. Pa. Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987)). Rather, Plaintiff need only demonstrate that a reasonable juror could either conclude that it is more likely than not that discriminatory animus determined Tris's course of action or disbelieve Tris's explanation. Plaintiff has done so here. Thus, Tris's Motion for Summary Judgment as to Plaintiff's disability discrimination claims is denied.

### B. Disability Retaliation (Counts I & II)

In conjunction with her disability discrimination claims, Plaintiff also asserts that Tris unlawfully retaliated against her in violation of the ADA and NJLAD. "To establish a claim for retaliation, a plaintiff must show, '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *Ruggiero v. Mount Nittany Med. Ctr.*, 736 F. App'x 35, 41 (3d Cir. 2018) (citation omitted). The *McDonnell Douglas* burden-shifting framework applies. *See Shellenburger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003).

First, Plaintiff has demonstrated that she engaged in protected activity. Following Plaintiff's tumor diagnosis, Plaintiff requested time off to go to doctor's appointments, including

a July 31, 2019 request for time off to see a specialist doctor. (*See* Tris SOMF ¶¶ 17–18.) The record also shows that Plaintiff requested a new office chair to accommodate her hip condition just before her termination and that Plaintiff had informally requested permission to use a handicap parking space at the office. (*See id.* ¶¶ 19–20.) Tris contends that such requests do not constitute protected activity because they amount to mere informal requests for accommodation and are supported only by Plaintiff's conclusory allegations. (*See* Tris Moving Br. at 17.) However, as courts in the Third Circuit have recognized, "[i]nformal charges or complaints of discrimination, as well as informal requests for accommodation, are sufficient to constitute protected activities for establishing a *prima facie* case of retaliation." *Kaniuka v. Good Shepard Home*, No. 05-02917, 2006 WL 2380387, at *9 (E.D. Pa. Aug. 15, 2006) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701–02 (3d Cir. 1995)). Moreover, each of Plaintiff's accommodation requests is supported, not by mere allegations, but Plaintiff's deposition testimony. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 800 (3d Cir. 1990) (explaining that "there is no rule of law that the testimony of a discrimination plaintiff, standing alone, can never make out a case of discrimination that could withstand a summary judgment motion"). Even excluding Plaintiff's requests for a new chair and use of a handicap parking space—the requests which Tris pointedly disputes—the record is clear that Plaintiff requested additional time off from work in the wake of her tumor diagnosis. Such requests are sufficient to establish that Plaintiff engaged in protected activity.

Second, the record shows that Plaintiff suffered an adverse employment action following her protected activity and gives rise to the inference of a causal link between the two. Temporal proximity between the protected activity and an adverse employment action alone can, in some instances, establish a *prima facie* case of retaliation when the proximity is "very close" or "unusually suggestive" of retaliation. *See LeBoon*, 503 F.3d at 232 (citing *Clark Cty. Sch. Dist. v.*

*Breeden,* 532 U.S. 268, 273–74 (2001)). Here, Plaintiff was terminated the day after she requested additional time off from work in order to see a specialist doctor to assess her tumors. (*See* Pl.'s SOMF ¶¶ 30–31.) Thus, the temporal proximity between Plaintiff's last accommodation request and her termination are as close as it gets. Indeed, on this basis alone, Plaintiff can establish a *prima facie* case of retaliation. *Cf. LeBoon*, 503 F.3d at 233 (explaining that "there is no bright line rule as to what constitutes unduly suggestive temporal proximity").

The burden-shifting analysis for Plaintiff's retaliation claims largely mirrors that of the disability discrimination claims. Tris asserts that it made its decision to restructure its marketing department well before Plaintiff was diagnosed with tumors as the cause of her hip pain and physical limitations. (*See* Tris Moving Br. at 19.) But, as explained above, the restructuring decision itself fails to address Plaintiff's ultimate termination—a decision that could have been made at any time between the decision to restructure the marketing department and August 1, 2019. Based on the record evidence and, in particular, the temporal proximity between Plaintiff's request for time off to see a specialist doctor and her termination, a reasonable jury could conclude that Plaintiff's termination was retaliatory. Because Plaintiff has raised a genuine issue of material fact as to whether the reasons offered by Tris for her termination were pretextual, Plaintiff's retaliation claims under the ADA and NJLAD survive the Motion for Summary Judgment. Tris's Motion is denied as to Counts I and II of Plaintiff's Complaint.

    **C.**    **Age Discrimination (Counts III & IV)**

Plaintiff's age discrimination claims under the ADEA and NJLAD are similarly assessed under the *McDonnell Douglas* burden-shifting framework. *See Fowler*, 19 F.4th at 298; *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) ("Age discrimination claims in which the plaintiff relies on circumstantial evidence proceed according to the three-part

burden-shifting framework set forth in [*McDonnell Douglas*].").[7] "ADA and ADEA claims differ only slightly in the elements needed to show a *prima facie* case of discrimination." *Fowler*, 19 F.4th at 298. Under the ADEA, "[t]he elements of a *prima facie* case of age discrimination are that: (1) the plaintiff is at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was ultimately replaced by another employee who was sufficiently younger so as to support an inference of a discriminatory motive." *Willis*, 808 F.3d at 644 (citing *Burton v. Teleflex Inc.,* 707 F.3d 417, 426 (3d Cir. 2013)). "Where the plaintiff is not directly replaced, the fourth element is satisfied if the plaintiff can provide facts which 'if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id.* (quoting *Pivirotto v. Innovative Sys., Inc.,* 191 F.3d 344, 352 (3d Cir. 1999)). If the plaintiff successfully establishes a *prima facie* case, the employer must set forth a legitimate non-discriminatory reason for its actions, which the plaintiff may then attempt to show is pretextual. *See id.*

       1.    <u>*Prima Facie* Case</u>

Tris contends that Plaintiff cannot establish a *prima facie* case of age discrimination because (i) she was not qualified for the position in question and (ii) she was not replaced, rather her position was eliminated in the restructuring of the marketing department. (*See* Tris Moving Br. at 5–6.) There is no dispute that Plaintiff is over 40 years old or that she suffered an adverse employment action.

---

[7] Notably, the Third Circuit continues to apply the *McDonnell Douglas* burden shifting framework to ADEA cases despite the Supreme Court's decision in *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167 (2009). *See Smith v. City of Allentown*, 589 F.3d 684, 690–691 (3d Cir. 2009) (distinguishing between the burdens of production and persuasion, and ultimately concluding that "we may not depart from our prior decisions applying *McDonnell Douglas* to age discrimination cases unless those decisions are irreconcilable with *Gross*.")

Under both the ADEA and NJLAD, whether Plaintiff was qualified for her position is assessed based on an objective standard. *See Sempier*, 45 F.3d at 729; *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 454 (2005) ("All that is necessary is that the plaintiff produce evidence showing that she was actually performing the job prior to the termination."). As such, subjective criticism of Plaintiff's job performance is not properly evaluated at the *prima facie* case stage. *See Sempier*, 45 F.3d at 729; *Zive*, 182 N.J. at 455 (explaining that "performance markers like poor evaluations are more properly debated in the second and third stages of the burden-shifting test, they do not come into play as part of . . . the *prima facie* case"). Here, Tris first points to Plaintiff's purportedly poor performance review as evidence that she was not qualified for the position in question. (*See* Tris Moving Br. at 5.) But even if that evidence was properly considered at this stage, Plaintiff's March 2019 performance review—the only performance review in the record—indicates that Plaintiff was meeting the company's expectations. (*See* Mitchell Decl., Ex. C.) Nothing in the March 2019 review demonstrates Plaintiff was unqualified or performing poorly at her job.

Tris also argues that the relevant "position in question" for qualification purposes is not Plaintiff's former position, which was eliminated, but rather the Senior Product Manager position, which required a greater scope of skills and responsibilities. (*See* Tris Reply Br. at 2.) Tris's argument in this respect raises genuine issues of material fact as to whether the new position meaningfully differed from Plaintiff's role. Still, there is evidence in the record indicating that Plaintiff was qualified for the new position. Curatolo testified that he considered Plaintiff for a new position in the marketing department and that Plaintiff had performed most of the required duties in the Senior Product Manager job posting. (*See* Mitchell Decl., Ex. E at 46:21–23, 56:10–67:18.) Plaintiff also testified that she performed all of the duties listed in the hiring announcement of one of the new Senior Product Managers. (*See* Mitchell Decl., Ex. D at 137:3–13.) Thus,

17

viewing the evidence in the light most favorable to Plaintiff, Plaintiff has demonstrated she was objectively qualified for the position in question for purposes of the present motion.

As to causation, Tris argues that Plaintiff cannot establish a *prima facie* case because she was not replaced by a sufficiently younger employee; rather, her position was eliminated. (*See* Tris Moving Br. at 6.) But, notwithstanding whether Plaintiff's position was eliminated or simply renamed, "[w]here the plaintiff is not directly replaced," the plaintiff can establish causation by providing "facts which if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Willis*, 808 F.3d at 644 (internal quotation marks and citations omitted). Here, the record includes sufficient evidence for a reasonable juror to conclude that Plaintiff's termination was an impermissible one based on her age. When Curatolo told Plaintiff she was being terminated, he explained to Plaintiff it was in part because of her lack of proficiency in social media. (*See* Pl.'s SOMF ¶¶ 32–34.) Taken together with other previous comments regarding Plaintiff's age by company leadership—including Curatolo frequently comparing Plaintiff to his mother, Mehta demeaning Plaintiff as "an old woman" in a meeting, and Perlman referring to Plaintiff as an elderly person with hip issues—the circumstances of Plaintiff's termination give rise to the reasonable inference that it was plagued by discriminatory animus. Such a conclusion is only bolstered by the fact that the employee hired into the role to which Plaintiff's job responsibilities were redistributed was under 40 years old and thus significantly younger than Plaintiff. (*See* Tris SOMF ¶ 23); *cf. Sempier*, 45 F.3d at 729 (explaining that while no particular age difference must be shown, courts have held that "a five year difference can be sufficient" for purposes of demonstrating a "sufficient age difference" with a replacement). Because such evidence, if otherwise unexplained, tends to show a causal link between Plaintiff's termination and her age, Plaintiff has stated a *prima facie* case of age discrimination.

        2.    <u>Pretext</u>

In response to Plaintiff's age discrimination charge, Tris maintains that Plaintiff was terminated as part of a marketing department restructuring. (*See* Tris Moving Br. at 7.) However, as explained above, the record indicates that the restructuring decision itself does not adequately refute Plaintiff's claims of discrimination in connection with the specific adverse action she suffered. Further, because Plaintiff's pretext arguments regarding her age discrimination claims largely overlap with those regarding her disability claims, the Court need not recount them in detail. With respect to Plaintiff's age specifically, Plaintiff has pointed to evidence, including age-based comments by company leadership and Tris's hiring of a significantly younger employee to assume her duties, that calls into question the legitimacy of Tris's explanation for its decision and could lead to the reasonable conclusion that Tris sought to impermissibly terminate an elderly employee.

To be sure, the Court does not find that Plaintiff has shown her age was the "but for" cause of her termination, as will be her burden at trial. *See Gross*, 557 U.S. at 176–77. At this stage, Plaintiff "need only point to evidence establishing a reasonable inference that the employer's proffered explanation is unworthy of credence." *Sempier*, 45 F.3d at 728. She has done so. Because "[t]he issue of pretext in this case turns largely on the credibility of the competing testimony" of Plaintiff and Tris's company leadership, "it is inappropriate to decide on a motion for summary judgment." *See Weldon*, 896 F.2d at 800. Tris's Motion for Summary Judgment as to Plaintiff's age discrimination claims is, therefore, denied.

## IV. CONCLUSION

For the reasons stated above, Tris's Motion for Summary Judgment is **DENIED**. An appropriate Order will follow.

Date: **May 22, 2023**

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**
